OF

# THE COURT OF APPEALS

## OF KENTUCKY.

### SUMMER TERM, 1866.

CASE 1—PETITION EQUITY—JUNE 5.

## Hall and wife vs. Light, Barrett & Co.

APPEAL FROM HICKMAN CIRCUIT COURT.

· 1. Where, in a parol ante-nuptial agreement, it was stipulated that the property belonging to the wife before marriage should be invested by the husband in real estate, for her use and benefit, and such investment was accordingly made, after the marriage, and the real estate conveyed to the wife, the creditors of the husband cannot, in a court of equity, subject such estate to the payment of his debts. (7 *Peters*, 389.)

2. The wife, having an equity at least equal to the creditors, and having fairly obtained the legal title by the execution of the parol trust, cannot be deprived of her legal advantage, no fraud in the transaction being shown.

PRYOR & CHAMBERS, for appellants, cited *Civ. Code*, 563, 167, 168; 18 *B. Mon.*, 71; *Vans. Eq. Pr.*, 81; *Roberts on Fraud. Con.*, 218 to 224; 3 *Met.*, 474; 13 *B. Mon.*, 499; 2 *Met.*, 422; 7 *Mon.*, 660; 4 *B. Mon.*, 266; 5 *B. Mon.*, 31; 6 *B. Mon.*, 27.

T. N. LINDSEY, for appellees, cited 1 *Rev. Stat.*, 264; 14 *B. Mon.*, 406; 15 *B. Mon.*, 443; 4 *Met.*, 86.

JUDGE WILLIAMS DELIVERED THE OPINION OF THE COURT:

Appellants, W. K. Hall and his wife Martha, formerly Mrs. McDonnel, were married February 26th, 1856. Her former husband was a merchant in Columbus. After his death she continued the business, under the direction and control of her brother, Thos. Winn, for some five years, and was still so engaged when W. K. Hall and herself, in contemplation of marriage, entered into an ante-nuptial parol agreement, that her property and estate, after paying her debts, should be invested by said Hall, for her use and benefit, in real estate in Columbus.

Soon after the marriage, and with the understanding that Hall would so invest her means, her brother delivered over to him some twenty-two hundred dollars' worth of merchandise; he paid her debts, and afterwards delivered to Hall about eight hundred dollars in cash and cash notes, making about $3,000 Hall thus received of his wife's estate.

Hall continued to do business in his own name until about the latter part of the year 1858, when he failed in business and became insolvent.

Hall having previously bought a part of lot No. 43, in Columbus, of Lester, to-wit: 25 feet front and 200 feet back, at $400—he caused a deed to be made to his wife, by J. N & W. D. Lunnan, December 30th, 1857. Lots Nos. 21, 22, 23, and 24, in Kentucky City, had been ordered to be sold by the chancellor as the property of Hendrix; and at the decretal sale, February 2d, 1857, Hall purchased these at $287 50, subject to certain liens, amounting to about $700. He discharged said liens, and, by written order, directed the commissioner to convey said lots to his wife, which the commissioner did by deed, dated December 31st, 1857.

After the marriage, Hall purchased another portion of said lot No. 43, in Columbus, of I. N. Huss, at $800. After this purchase he surrendered to Huss the first title bond, and procured Huss to execute a bond to himself and wife at the time, assigning as a reason that he was investing her funds and wanted her to have the title. Hall paid for this lot, though

Huss seems never to have made the deed; yet he states in his deposition that it has been fully paid for.

Hall subsequently to the marriage, and before his failure, erected on one or the other, or both of these purchases, in No. 43, a warehouse, which he says cost about $800.

Hall purchased another lot of Seay, for which he paid down $200; but the remainder of the purchase price has never been paid to Seay, and he seems not to have paid his vendor; and so this lot, although purchased in the name of his wife, seems to remain without further notice or care.

Light, Barrett & Co. having obtained an execution against W. K. Hall, had it levied on lot No. 3, and original lots Nos. 149 and 150, in Columbus, and sold as his property, and Mrs. Hall became the purchaser at the sheriff's sale for $150; and this money she afterwards raised and paid by the sale of her gold watch, and from rents derived from the store-house of her first husband.

The appellees, being various creditors of Hall to the aggregate amount of about $7,500, having failed to make their debts by execution, filed their several petitions against Hall and wife, which were consolidated, charging that all these transactions were fraudulent, and asking that the property be subjected to the payment of their debts.

Hall and wife answer separately, deny any fraud, and set up the ante-nuptial contract as an explanation and consideration for these various conveyances. The court set aside the conveyance to lots Nos. 21, 22, 23, and 24, in Kentucky City, and the conveyance from J. N. & W. D. Lunnan and I. N. Huss, as fraudulent, and held said property liable, and ordered it to be sold for the appellees' benefit. Nothing is said of the other property in the judgment.

Hall and wife and the McConnel heirs prosecute an appeal to reverse this judgment.

The property was sold as directed by their judgment, and brought the aggregate sum of $3,505. Hall had also become guardian for his wife's five minor children by her first husband; he had also put on the lot descended to them from their father a building. The petitions sought a sale of this

also. These wards were made parties and sat up an interest in the ante-nuptial contract of their mother with Hall.

It being shown that the building erected by Hall on their lot was with their own means, plaintiffs dismissed their petition as to this lot.

Whatever may be Mrs. Hall's interest in these conveyances, by virtue of said ante-nuptial agreement, her children certainly have none such as they are entitled to litigate.

The judgment being silent as to the lots purchased by Mrs. Hall under the execution against her husband, her title thereto may and should be regarded as affirmed; hence, the only question for us to determine, is as to the lots ordered to be sold for appellees' benefit.

If the Seay lot be left out of view by us, as it seems to have been by the court below, the purchase and outlay of Hall in said lots amounts to $2,987 50, a little less than the amount derived from his wife. If regarded, it would swell the sum to $3,187 50, a trifle more than he received. It is insisted, as this parol contract could not be enforced according to the provisions of section 1, chapter 22 (1 *Stant. Rev. Stat., p.* 264), that it is wholly insufficient to support the conveyances as against the creditors of the husband. This parol contract having been executed by a conveyance of property to the wife, or an investment of funds for her, and the creditors having to seek equitable relief, presents a very different question than would be presented if the wife was seeking the aid of the chancellor to compel a specific execution against her husband and his creditors. Mrs. Hall has the legal title, which can only be taken from her by a superior equity, or because she has fraudulently obtained this title.

As she has established the ante-nuptial contract, and that the funds were put into her husband's hands in pursuance thereof, and that he, in good faith, in the execution of such contract, invested them in real estate for her use and in her name, no fraud in fact is made out as against her.

Have the creditors a superior equity to her? It will be remarked, that Mrs. Hall was not securing to herself any portion of the estate of her intended husband, but was merely

providing that her own estate should not vest in him on the consummation of the contemplated marriage, which it would otherwise have done. In this there was nothing illegal; nothing contrary to public policy; nothing that could unjustly injure Hall's creditors.

It was substantially a contract by which he undertook to act as her trustee, invest her funds for her benefit, and not claim them himself by virtue of his marital rights.

In the celebrated case in the supreme court of the United States, of Maguire *et al.* vs. Thompson *et al.* (7 *Peters' S. C. R.*, 389), in which Thompson, in contemplation of marriage with Miss Stockton, undertook to build a house on ground given her by her father, furnish it, and to invest $40,000 in stocks for her benefit. After the marriage, he expended $13,000 in building the house, $5,000 in furnishing it, and about the time of his failure paid over to her trustee $9,500. Thompson having failed for a large amount, his creditors assailed these transactions, and sought to subject the property. Judge Story, who delivered the opinion of the court, said: "Nothing can be clearer, both upon principle and authority, than the doctrine, that to make an ante-nuptial settlement void, *as a fraud upon creditors*, it is necessary that both parties should concur in, or have cognizance of, the intended fraud. * * * Marriage, in contemplation of law, *is not only a valuable consideration to support such settlement, but is a consideration of the highest value, and, from motives of the soundest policy, is upheld with a steady resolution.* The husband and wife, parties to such a contract, are therefore deemed, in the highest sense, purchasers for a valuable consideration; and so that it is *bona fide*, and without notice of fraud, brought home to both sides, it becomes unimpeachable by creditors."

How infinitely stronger is the equity of Mrs. Hall. She contracted for none of Hall's estate. She contracted alone for his faithful and honest discharge of duty as her trustee, in the investment of the funds she already owned. He, as husband, agreed to this, and that he would so invest it. He did so invest it, after the marriage, according to the contract; the assets, in conscience, never were his, though under his

control. Had he invested such an amount, and in such a manner as to indicate that he was not, in good faith, merely discharging his duties as trustee with the trust fund, but was making this a pretext to cover up his estate and to hinder and delay his creditors, and she had accepted conveyances of such character, then, indeed, could fraud be justly imputed; but when only the actual amount received is invested, and that with reasonable dispatch, and no circumstance in the case to contaminate her with any fraudulent intent, it is hard to perceive how these conveyances can be set aside as fraudulent.

Her equity is as clear and elevated as that of any creditor. She has obtained the legal title by the execution of this parol trust on the part of her husband, and now has the advantage of the legal title with at least equal equity; and of this advantage she cannot be deprived.

This was a proceeding to set aside these conveyances as fraudulent, and to subject the property to appellees' claims. It is not a proceeding under our statute of March 10th, 1856; nor does this statute apply to this case, for various reasons not necessary to be assigned.

Mrs. Hall is entitled either to the property or its proceeds, as she may elect to take the one or the other. If the proceeds be adjudged to her, the court below will see that these be invested for her use and benefit, free from the control of her husband or his creditors.

Wherefore, the judgment is reversed.